IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>DENISE M. HAY,<br><br>    Debtor. | Chapter 7<br><br>Case No. 22-10564 (LSS) |
| COMMONWEALTH OF<br>PENNSYLVANIA,<br><br>    Plaintiff,<br><br>    v.<br><br>DENISE M. HAY,<br><br>    Defendant. | Adv. Pro. No. 23-50388 (LSS) |

**OPINION**

In this adversary proceeding, the Commonwealth of Pennsylvania

("Commonwealth") seeks to deny a discharge to Denise Hay ("Debtor") either in its

entirety or as to claims asserted under Pennsylvania's Consumer Protection Laws (defined

below).  For the reasons set forth below, judgment is entered in favor of Debtor.

**Background**[1]

For the past 43 years, Ms. Hay has been in the travel business.  At all relevant times,

Ms. Hay operated her business through Grand View Tours, Inc. ("Grand View Tours"),

---

[1] This Opinion constitutes the Court's findings of fact and conclusions of law as required by Federal
Rules of Bankruptcy Procedure 7052 and 9014(c) after a one-day trial.  *See* Procedural Posture, *infra*
p. 8.

which was incorporated in Pennsylvania in 1984.[2]  The business was initially located in

Chester Heights, Pennsylvania.  After Ms. Hay and her husband relocated to Ocean View,

Delaware for health reasons in 2017, and she surveyed the need for travel services in her

new community, Ms. Hay determined to continue her business in Delaware.[3]

Ms. Hay is the sole owner and the only employee of Grand View Tours, which

operates both as a travel agent and as a tour operator.[4]  As the sole employee, Ms. Hay

handles all communications with customers and vendors and all financial transactions for

the company.[5]  In its capacity as a travel agent, Grand View Tours books travel for its

clients on other tour operators, such as Viking, Globus or CIE Tours and books travel on

airlines.[6]  Compensation as a travel agent is through commission.[7]  In its capacity as a tour

operator, Grand View Tours plans and arranges tours for groups.[8]  A package includes all

aspects of the trip from transportation to accommodations to meals to activities.

Compensation as a tour operator is built into the price of the package.[9]

In 2018, Father Costa of St. Francis of Assisi parish in Springfield, Pennsylvania

approached Ms. Hay about organizing a trip to Europe around the world-famous

---

[2] Debtor Ex. 1; Trial Tr. 113:11-114:3, ECF No. 24.

[3] Trial Tr. 249:4-250:2.

[4] Trial Tr. 114:2-7.

[5] Trial Tr. 115:14-23.

[6] Trial Tr. 116:5-13.

[7] Trial Tr. 116:22-117:5.

[8] Trial Tr.116:14-21; 253:21-256:17.

[9] Trial Tr. 116:8-117:15; Commonwealth Ex. 5.

Oberammergau Passion Play, a performance held only once every ten years.[10] Ms. Hay has known Father Costa for a long time and Grand View Tours previously arranged three pilgrimages for Father Costa.[11]

Grand View Tours proceeded to plan the tour for May 10-20, 2020. It started with a flight from Philadelphia to Amsterdam, continued through Bruges and Cologne and finally to Oberammergau before the flight back from Lucerne.[12] The cost of the tour was $4,995 per person/double occupancy and included airfare, hotel accommodations, certain specified meals, local tour guides, entrance fees, daily mass, and a Professional English-speaking tour guide.[13] The trip was billed as "the Seeds of Faith and the Oberammergau Passion Play Pilgrimage with Father Anthony Costa."[14] Brochures were printed with the itinerary, cost and General Terms and Conditions.[15]

Individuals started signing up for the tour in 2019. Payment terms included a non-refundable deposit of $1000, a second payment of $500 and then payment in full by December 20, 2019.[16] By the end of 2019, Grand View Tours had registered and collected payments from thirty-three individuals (collectively, "Travelers") in the amount of

---

[10] Trial Tr. 118:6-18.

[11] Trial Tr. 118:19-119:3; 252:8-253:20.

[12] Commonwealth Ex. 2.

[13] *Id.*

[14] *Id.*; Trial Tr. 15:9-14.

[15] Debtor Ex. 5; Commonwealth Ex. 2.

[16] The Brochure states that final payment is due December 20, 2020, but this is an obvious mistake. Debtor Ex. 5. *See also* Trial Tr. 49:21-50:10; 124:6-11.

$165,535.[17]  Most Travelers also separately purchased travel insurance through Grand View Tours.[18]  All Travelers signed a registration consent form governed by terms & conditions that included a cancellation policy providing that the deposit and the final payment are non-refundable.[19]  Payments made by Travelers to Grand View Tours were deposited into Grand View Tours's operating account when received and used by the business in the normal course of its operations.[20]

From October 2018 through January 31, 2020, Grand View Tours made $80,543.03 in payments to GM Travel, which Grand View Tours used as its booking agent in Europe, for the Seeds of Faith Pilgrimage.[21]  Grand View Tours also confirmed flights through American Airlines.[22]  Unfortunately, the Seeds of Faith Pilgrimage was disrupted by the COVID-19 pandemic, which locked down much of the United States and Europe in March,

---

[17] Commonwealth Ex. 8.

[18] *Id.*

[19] Debtor Ex. 2; Commonwealth Ex. 2.  The form also contained a responsibility clause:

> **Grand View Tours, Inc.** and supplier services in connection with the travel program are not responsible for any illness, loss, or injury to person or property, any delay or extra costs incurred due to the delay or cancellations caused by weather or events beyond anyone's control.  Travel documents will be sent approximately 3 weeks before departure date, pending all payments are received on time.  The itinerary may change based on events and circumstances beyond our control.

[20] Trial Tr. 191:6-15.

[21] Commonwealth Ex. 7; Trial Tr. 129:6-25.

[22] Commonwealth Ex. 10.

2020.[23]  GM Travel informed Grand View Tours that the Oberammergau Passion Play was postponed.[24]

On June 13, 2020, Grand View Tours communicated with the Travelers about the state of the travel industry, generally, and the rescheduling of the Oberammergau Passion Play for the May-June 2022 timeframe.[25]  In the fall of 2020, three more Travelers signed up for the rescheduled pilgrimage and paid $6,000 toward the trip.[26]

In the spring and summer of 2020, Grand View Tours received refunds from vendors when travel/trips were postponed due to the pandemic, including in connection with the Seeds of Faith Pilgrimage.[27]  Those refunds, including $62,000 from GM Travel, were placed in Grand View Tours's operating account and used in the ordinary course of the business.[28]  Grand View Tours issued refunds in the aggregate amount of $64,628 and passed through returned vendor deposits in the amount of $15,635.81 to customers whose trips were to take place from April through September of 2020.[29]  No refunds were issued to Travelers at that time.

---

[23] Trial Tr. 136:13-137:5.

[24] *Id.*

[25] Commonwealth Ex. 11; Trial Tr. 137:19-22.

[26] Trial Tr. 126:18-20.

[27] Commonwealth Ex. 12.

[28] Trial Tr. 164:6-13.

[29] Commonwealth Ex. 12; Trial Transcript 155:10-156:23.  Eventually, Grand View Tours simply ran out of money to make refunds and offered to pay customers over time or issued a future travel credit, which was accepted.  Trial Tr. 262:21-263:7.

On March 29, 2021, Grand View Tours communicated with Travelers that their trip was re-scheduled for May 24 to June 5, 2022 and the itinerary would remain the same.[30] Further information, including about safety protocols and covid requirements would be forthcoming.  Grand View Tours did not require any further payment from Travelers despite the additional work needed to re-plan the Seeds of Faith Pilgrimage.[31]

But about ten months later, in mid-January, 2022, Ms. Hay began to realize she would not be able make payments to her vendors for the Seeds of Faith Pilgrimage.[32]  After a discussion with Father Costa, on February 11, 2022, Grand View Tour notified Travelers that it was unable to complete travel arrangements for the pilgrimage due to the impact of the pandemic on her business and offered each of them an opportunity to travel with the company in the future or be refunded over time.[33]  Prior to that time, Ms. Hay did not share with Travelers any information regarding Grand View Tours's financial condition.[34]  But, in early February, 2022, Grand View Tours did not have the funds to make the necessary payments to its vendors.[35]

---

[30]  Commonwealth Ex. 13.

[31]  Trial Tr. 50:22-51:4; 179:9-14.  Of the $4,995 price of the Seeds of Faith Pilgrimage, $765 was Grand View Tour profit ($592) and postage, documents, pretrip gathering & Group leader allowance ($200 less $27 for rounding).   Commonwealth Ex. 5; Trial Tr. 128:23-131:4.

[32]  Trial Tr. 196:16-22.

[33]  Commonwealth Ex. 14 ("I am deeply sorry for this situation and am kindly asking you to please consider the possibility of retaining a credit for a future trip with Father or waiting until a refund is possible.").

[34]  Trial Tr. 69:17-19; 192:10-20; 205:8-13.

[35]  Trial Tr. 196:8-15.

When Grand View Tours was updating Travelers, Ms. Hay was looking at its bookings as a travel agent and the expected commissions that would come in to permit it to fund the necessary payments for the Seeds of Faith Pilgrimage.[36] Grand View Tours had successfully weathered other significant challenges in the travel industry over its forty-three year existence, including the downturns in travel after 9/11, the D.C. sniper and the DIP in the economy in 2008.[37] Grand View's revenues were $ 1 million in a big year and $500,000 in a small year.[38] Until her conversation with Father Acosta in February of 2022, Ms. Hay believed she would get the funds and the Seeds of Faith Pilgrimage would go forward.[39]

Grand View Tours was not able to issue full refunds to Travelers in February 2022, nor did Grand View Tours think full refunds were legally required. Because the next Oberammergau Passion Play was in 2030, most Travelers did not want a credit toward future travel.[40] Nor did Travelers want a refund over time.[41] Rather, many Travelers demanded that Grand View Tours refund their payments immediately.[42] Shortly after the February 11, 2022 communication, several Travelers got legal counsel involved and/or

---

[36] Trial Transcript 185:24-187:24; 193:10-22; 196:16-22.

[37] Trial Tr. 216:20-217:11; 246:23-247:12.

[38] Trial Tr. 250:17-251:7; Debtor Ex. 2 (Grand View Tours, Inc., Schedule 1120-S showing gross receipts of $768,000 for 2019, $18,837 for 2020, $170,396 for 2021 and $63,182 for 2022).

[39] Trial Tr. 185:24-190:12; 247:13-248:5; 251:11-252:7.

[40] *See e.g.* Trial Tr. 26:25-27:6; 122:24-123:17.

[41] *See e.g.* Commonwealth Ex. 34. Mr. Moral testified that he would have accepted a refund over time and proposed a ten to twelve week payment schedule, which Ms. Hay informed him was not doable. Trial Tr. 90:1-91:3.

[42] Trial Tr. 204:16-205:7.

threatened legal action.[43]  A few Travelers filed travel insurance claims that were denied

since the pandemic was not covered; others appeared to pre-judge the outcome and did not

submit claims on their insurance policies.[44]  Some Travelers attempted to initiate

chargebacks with their credit card companies, but their requests were denied upon Grand

View Tours's responses.[45]  Certain of the Travelers also banded together to reach out to their

state representatives and fifteen Travelers also filed consumer complaints with the

Pennsylvania Office of Attorney General Bureau of Consumer Protection.[46]  Prior to the

Seeds of Faith Pilgrimage, Grand View Tours had only one chargeback request, which was

the result of a customer mistake.[47]

Thereafter, Ms. Hay filed this personal bankruptcy case.  She also started booking

business under another entity, Ocean View Tours & Travel, LLC, a fictitious name she

registered in 2017 when she relocated to Delaware.[48]

**Procedural Posture**

Debtor filed a voluntary petition under chapter 7 of the United States Bankruptcy

Code on June 25, 2022.  In her petition, Ms. Hay scheduled a number of "commercial debt"

claims based on the payments made by Travelers—all listed as disputed.  Twenty proofs of

---

[43] *See e.g.* Commonwealth Exs. 23, 27, 30.  Mr. Moral also hired an attorney, Trial Tr. 95:12-14, and filed a complaint with the Better Business Bureau making unfounded (and untrue) allegations, Trial Tr. 96:14-96:7.

[44] *See e.g.* Trial Tr. 31:14-32:4.

[45] Commonwealth Exs. 22, 25, 26.

[46] Commonwealth Exs. 1, 18, 20, 23, 24, 29, 37, 39, 41, 43; Trial Tr. 60:11-62:3.

[47] Trial Tr. 250:3-16.  One Traveler testified she had traveled with Grand View Tours previously with no problems.  Trial Tr. 63:22-64:8

[48] Trial Tr. 211:18-213-1.

claims filed by Travelers (either individually or for couples) total $171,535. The Commonwealth of Pennsylvania also filed a proof of claim in the aggregate amount of $105,617.99 for restitution, penalties, fines, costs, attorney fees and interest. All of these proofs of claims are filed as unsecured debt.[49] Debtor filed objections to each of these claims denying personal liability for the corporate debt of Grand View Tours.[50] Debtor's petition also lists other commercial debt (which appear to be lines of credit) owed by Grand View Tours, which Ms. Hay may have guaranteed.[51]

On May 24, 2023, the Commonwealth filed this adversary proceeding seeking to hold Debtor personally liable for the debts owed to Travelers by Grand View Tours and to determine that such debts are excepted from discharge.[52] The Commonwealth alleges, in four counts, that the debts are non-dischargeable because Debtor:

(1) obtained money from the Travelers under a false pretense, through a false representation, or actual fraud under §523(a)(2)(A);

(2) committed fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny under §523(a)(4);

(3) owes to the Commonwealth the civil penalty that is "a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit" under §523(a)(7); and

---

[49]  The proofs of claim filed by Travelers reflected on the Claims Register appear to be filed as unsecured claims. *See* Claims Register, *In re Hay*, No. 22-10564 (Bankr. D. Del. June 25, 2022). The Commonwealth's proof of claim is also filed as an unsecured claim, but with a priority of up to $3,350 per deposit under 11 U.S.C. § 507(a)(7). Commonwealth Ex. 1.

[50]  Case No. 22-10564, ECF Nos. 47-67, 78.

[51]  *See* Case No. 22-10564, ECF No. 1; Commonwealth Exs. 58, 59, 60; *see also* Trial Tr. 261:22-262:9.

[52]  The Office of the United States Trustee also filed an adversary proceeding seeking to find these debts non-dischargeable. *Vara v. Hay*, Adv. Pro. No. 23-50389 (Bankr. D. Del. May 24, 2023). The two adversary proceedings were going to proceed together, but the United States Trustee voluntarily dismissed his lawsuit on September 26, 2024.

(4) failed to adequately explain the deficiency of assets to meet her liabilities under §727(a)(5).

A one-day trial was held on December 9, 2024. Debtor testified on her own behalf. Five Travelers testified on behalf of the Commonwealth. All stipulated exhibits were admitted into evidence.[53] At the conclusion of the hearing, I asked the parties to make post-trial submissions, with a particular focus on whether Ms. Hay was responsible for the debts of Grand View Tours and the specific facts supporting non-dischargeability. Those submissions were made.[54] In its post-hearing submission, the Commonwealth refines its argument to be that: (i) the civil penalties portion of its proof of claim is nondischargeable under §523(a)(7) and (ii) the restitution component of its proof of claim is excepted under §523(a)(2).

Having considered the evidence, the credibility of the witnesses, and the parties' legal arguments, the matter is ripe for decision.

## Jurisdiction

The Court has jurisdiction pursuant to 28 U.S.C. §1334(b). This is a core proceeding, and I may enter a final judgment consistent with Article III of the United States Constitution.[55]

## Discussion

Initially, there was no evidence presented that the relationship between Travelers and Grand View Tours established a debt between any Traveler and Ms. Hay. Indeed, all

---

[53] Commonwealth Exs. 1-60; Debtor Exs. 1-3, 5-9. There was an objection to Debtor Ex. 4, and Debtor did not press for admission.

[54] ECF No. 22, Debtor Post-Trial Submission; ECF No. 23, Commonwealth Post-Trial Submission.

[55] 28 U.S.C.A. § 157(b)(2)(I).

evidence is to the contrary.  The brochure/advertisement for the Seeds of Faith Pilgrimage prominently displayed the Grand View Tours logo, payment was sent to, and checks were made payable to, Grand View Tours and the Registration/Consent Form was sent to Grand View Tours.  Further, the Confirmation & Invoice of payments made by Travelers were sent by Grand View Tours.[56]  Communications by Ms. Hay through her emails was as an employee of Grand View Tours.  Moreover, there was no evidence presented that Grand View Tours did not follow all corporate niceties, including the filing of appropriate tax returns.  Finally, the Commonwealth did not cite any state law for the proposition that, as the owner and sole employee of Grand View Tours, Ms. Hay is generally responsible for the entity's debts.

Instead, the Commonwealth asserts that Ms. Hay is personally liable for Grand View Tours's violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 ("Consumer Protection Law") under what Pennsylvania recognizes as "the participation theory."  The Commonwealth asserts that the participation theory permits a finding of liability under the Consumer Protection Law against an individual corporate actor who participated in the alleged affirmative acts of misconduct or if the individual should have known about the corporate misconduct and did not correct it.[57]

Having reviewed the cited cases, and others, it is clear that Pennsylvania does recognize this separate theory of individual liability, though its complete contours are

---

[56]  *See e.g.* Commonwealth Ex. 3.

[57]  Commonwealth Post-Trial Submission, at 2 *(citing Village at Camelback Prop. Owners Ass'n v. Carr,* 538 A.2d 528, 533 (Pa. Super. Ct. 1988); *B&R Res., LLC v. Dep't of Envtl. Prot.,* 180 A.3d 812, 818 (Pa. Cmmw. Ct. 2018); *Kaites v. Dept of Envt. Res.,* 529 A.2d 1148 (Pa. Cmmw. Ct. 1987); *Wicks v. Milzoco Builders, Inc.,* 470 A.2d 86, 91 (Pa. 1983).

unclear. The theory has been held to apply in the context of a commission of a tort,[58] which requires both a duty and breach. In that instance, a plaintiff must allege "(1) the existence of tortious conduct and (2) knowing participation in or personal direction of the tortious conduct."[59] The participation theory also appears to apply in the context of a statutory violation.[60]

The Commonwealth has not alleged that Grand View Tours, much less Ms. Hay, owed Travelers a fiduciary duty. There is no evidence that there was a fiduciary relationship between Grand View Tours and Travelers. Instead, the evidence is that there was a straight-forward contractual arrangement—payment for the provision of the Seeds of Faith Pilgrimage. Further, nothing in the arrangement, including the Terms and Conditions, required Grand View Tours to hold any payments made by Travelers in escrow. Finally, the Commonwealth does not make any allegations of negligence. Accordingly, I conclude that Ms. Hay cannot be held liable to Travelers under a participation theory of liability based on a tort.[61]

Instead, the Commonwealth contends that Ms. Hay is personally liable for violations of the Consumer Protection Laws. The Commonwealth alleges, among other things that: (i) she was the sole owner and only employee of Grand View Tours, (ii) made all decisions regarding allocation of trip deposits, (iii) misrepresented information regarding the

---

[58] *See e.g. Foster v. Attias,* Civ. Action Nos. 18-4853, 19-866, 2020 WL 5439360, at *6 (E.D. Pa. Sept. 10, 2020); *Wicks*, 470 A.2d at 89-90.

[59] *Foster v. Attias*, 2020 WL 5439360, at *6.

[60] *B&R Resources*, 180 A.3d at 818.

[61] *Walsh v. Alarm Sec. Grp., Inc.*, 95 F. App'x 399, 402 (3d Cir. 2004) (noting that the participation theory does not apply in the context of an action for breach of contract).

rescheduling of the tour to Travelers, (iv) misspent the refund from GM Travel, (v) diverted

Travelers' money such that funds were not available to pay for the tour and (vi) made

misrepresentations to credit card companies to prevent chargeback requests.[62]

Given this background, the questions before the Court are:

1. Does the evidence comport with the Commonwealth's recitation of Ms. Hay's alleged wrongdoing?

2. If so, is Ms. Hay's conduct a violation of the Consumer Protection Law?

3. If so, should Ms. Hay be denied a general discharge or are any of the Commonwealth's claims nondischargeable under Section 523 of the Code?

## I.    *The Consumer Protection Law*

The Consumer Protection Law provides that "unfair or deceptive acts or practices in

the conduct of any trade or commerce as defined by subclauses (i) through (xxi) . . . are

hereby declared unlawful." Those twenty-one unfair and deceptive acts are enumerated in

the statute. The Commonwealth has placed two at issue:

(1) Section 201-2(4)(v), representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have;

(2) Section 201-2(4)(xxi), engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding.[63]

Courts construe the Consumer Protection Law liberally.[64]

---

[62] Commonwealth Post-Trial Submission, at 4-5; Debtor Ex. 8 (Commonwealth's response to interrogatory 12).

[63] *See* Commonwealth Ex. 1. The cases cited by the Commonwealth in its Post-Hearing Submission do not discuss the standard for these two particular sections.

[64] *See Earl v. NVR, Inc.*, 990 F.3d 310, 312 (3d Cir. 2021).

As for section 201-2(4)(v), the Commonwealth does not point to any evidence that the Seeds of Faith Pilgrimage sponsorship, approval, affiliation, benefits or connection was not as advertised. The Seeds of Faith Pilgrimage was exactly as advertised; there was no deception as to what it was going to be or that Grand View Tours sponsored it for Father Costa. It was simply not provided.

As for Section 201-2(4)(xxi), this provision has been referred to as a "catch-all" provision.[65] The Pennsylvania Supreme Court has ruled that this provision is akin to strict liability (i.e. no intent is required), none-the-less, there must still be fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding for the average consumer when making the purchasing decision as well as reliance.[66]

The Commonwealth contends multiple actions taken by Ms. Hay—after the Oberammergau Passion Play was cancelled because of the pandemic—were unfair or deceptive acts. The Commonwealth asserts that communications and actions in June and July of 2020 were intended to mislead Travelers or to "make it impossible" for her company to perform on the re-scheduled trip in May 2022. Those actions include the June 2020 email informing Travelers of the rescheduled date, the decision to request a $62,000 refund of a deposit with GM Travel (rather than having GM Travel keep the funds for the next one and one-half years). The Commonwealth contends that Ms. Hay "diverted the participant's

---

[65] *Gregg v. Ameriprise Fin., Servs. Inc.*, 245 A.3d 637, 646 (Pa. 2021).

[66] *Gregg*, 245 A.3d at 646 ("Creating both public and private causes of action, the legislature established a statutory claim for anyone who demonstrates that: (1) they purchased or leased 'goods or services primarily for a personal, family, or household purpose'; (2) they suffered an 'ascertainable loss of money or property'; (3) the loss occurred 'as a result of the use or employment by a vendor of a method, act, or practice declared unlawful by' the CPL; and (4) the consumer justifiably relied upon the unfair or deceptive business practice when making the purchasing decision.").

money" and failed to disclose what she was doing with the payments previously made. Similarly, the Commonwealth contends that Grand View Tours's determination to make refunds to other customers and to lease a "luxury car" was a misuse of funds, and in any event, Travelers were not informed of those uses.

The Commonwealth's contentions start from an incorrect premise—that placing payments from Travelers in Grand View Tours's operating account was somehow improper or deceptive. It was neither. The Commonwealth cites to no law for the proposition that the payments made by Travelers (or any customer) had to be placed in escrow or used only for the specific tour at issue. Indeed, that was not Grand View Tours's practice.[67] Once Travelers made their payments, the funds belonged to Grand View Tours and could be used for all operating purposes.[68] Travelers were never told otherwise. As for the lease of the Mercedes C class car in June 2020, this was necessitated by the expiration of a current lease and the terms were not challenged as (nor do they appear to be) anything other than market

---

[67] The evidence is that all payments made by Travelers on the Seeds of Faith Pilgrimage were placed in Grand View Tours's operating account. And, there was no testimony of a straight line between those payments and the payments Grand View Tours initially paid to its vendors for the Seeds of Faith Pilgrimage. A comparison of (x) the dates Travelers's payments were deposited in Grand View Tours's bank account, (y) the date of payments to GM Travel and (z) Grand View Tours's bank statements during the relevant time periods strongly suggest that was not the case. *Compare* Commonwealth Exs. 7, 8, 48 and 49.

[68] *See In re Nordstrom*, Adv. No. 02-8167, 2004 WL 51284, at *3 (Bankr. C.D. Ill. Jan. 7, 2004) ("Absent any representation by the DEBTOR to segregate each deposit, the relationship between the DEBTOR and her customers is simply that of creditor and debtor based upon a contractual agreement. A customer's payment of the deposit to the DEBTOR transferred ownership of the monies, permitting her unrestricted use of the funds in the operation of her tour business."). The Commonwealth focuses on the opening and closing balances of the PNC account at various dates. Such a focus misunderstands the business's cash flow. It also ignores that in 2019 tens of thousands of dollars could flow through the account in any given month. *See e.g.* Commonwealth Ex. 48, January 2019 bank statement (Beginning balance of $6,858.69, ending balance of $7,444.03, deposits and other additions $62,143.00, checks and other deductions $61,577.66).

terms.[69]  The car served as both Ms. Hay's personal car as well as the vehicle through which Grand View Tours could provide limousine service to airports and visit clients.[70]

Given Grand View Tours's forty-three years in business and its successful operations through multiple challenges in the industry, it was not unreasonable for Ms. Hayes to believe that the company would survive the pandemic as well.  In June and July 2020, there was not necessarily reason for Ms. Hayes to believe that travel would be disrupted for the next one to two years or that she would not have business, and therefore revenue, to pay vendors for the re-scheduled Seeds of Faith Pilgrimage.  The evidence does not support the Commonwealth's conclusion that "the purpose of [Ms. Hay's] representation[s] was to deceive trip participants into believing the trip would occur so that they would not begin demanding refund of their deposits."[71]

The Commonwealth also takes issue with Grand View Tours's later conduct.  It contends that Grand View Tours's February 11, 2022 email to Travelers was deceitful because Grand View Tours did not have an ability to issue a refund or provide future credit on another trip.  While perhaps optimistic, or even unrealistic, had Travelers agreed to work with Grand View Tours rather than demand immediate payment, it is possible that Grand View Tours might have survived.  Instead, the immediate demands for refunds when Grand View Tours did not have funds to comply as well as the retention of lawyers and threats of lawsuits, apparently led Ms. Hay to shut down the business and start fresh with a new company.  Having heard the testimony, I conclude that Ms. Hay was sincere in her offer of

---

[69] Commonwealth Ex. 47; Trial Tr. 282:9-22.

[70] *See generally* Trial Tr. 145:16-150:6.

[71] Commonwealth Post-Trial Submission, at 5.

16

credit toward a future trip or a refund over time, but that it was not accepted by Travelers.

Finally, the Commonwealth asserts that Ms. Hay made misrepresentations to credit card companies that prevented certain Travelers from recovering their payments via chargebacks. Grand View Tours responded to requests from credit card companies fairly uniformly, writing that the tour had been cancelled because of the pandemic, payments on the trip were nonrefundable and the client was offered a future travel credit or a refund in the future (at an unknown date).[72] Each of these statements, individually, was true. More importantly, no Traveler relied on these statements as they were directed at the credit card companies. And more fundamentally, as with all of Grand View Tours's conduct post-

---

[72] *See e.g.* Commonwealth Ex. 25:

> This pilgrimage was non-refundable as outlined in our brochure and terms which were included. We state under our responsibility that we are not responsible for any loss due to events beyond our control such as a pandemic. The client's travel insurance did not cover the pandemic however, we provided a future travel credit toward a rescheduled trip. Due to circumstances beyond our control the pilgrimage is not taking place. Client was advised of this and offered a future travel credit as the trip was NON-REFUNDABLE or refund in the future as good faith. Due to the impact the pandemic continues to have on my business, we could not at the time commit to an exact date of refund. Client demanded an immediate refund. The impact the pandemic has had on the travel industry is unprecedented and client was advised they would receive their refund, in time. Refunds take longer in a pandemic economy. This charge back is unwarranted, and I request that the chargeback is reversed.

Commonwealth Ex. 22:

> I am requesting you reverse the dispute case referenced above because:
>
> 1. Client was aware and agreed to terms and conditions of the program, clearly stated on both our brochure and her confirmation which she received prior to making the non-refundable deposit. Brochure and invoice included.
> 2. Our agency advanced non-refundable payments on her behalf.
> 3. Client purchased insurance on 8/1/2020 and can submit a claim to the insurance company.
> 4. Trip did not operate due to COVID.
> 5. We offered in good will a future travel credit which client refused.

February 2020, none of it affected Travelers when they made their respective decisions to purchase the Seeds of Faith Pilgrimage, as none occurred in that context. All of the complained-of conduct post-dates the purchase of the trip and focuses on the inability to obtain a refund. While Travelers have a claim against Grand View Tours for their damages,[73] their inability to obtain a refund was based on the failure of the business, not a deceptive business practice when they signed up for the Seeds of Faith Pilgrimage.

The Commonwealth cites *Manson*[74] for the type of conduct that supports a finding of a liability for violations of the Consumer Protection Law (as well as for conduct creating personal liability). In *Manson*, the Commonwealth sued a furniture retailer and its chief executive officer seeking restitution. On appeal, the court upheld the trial court's findings that the retailer and its CEO engaged in deceptive trade practices when the retailer "took orders for merchandise and received payments from customers when [it] knew or should have known that the merchandise would not be delivered to those customers."[75] The court also upheld the CEO's personal liability based on evidence that the CEO "was informed about inventory problems and sales practices, that Manson directed the company not to sell display merchandise, that Manson was the final step in the refund process and that Manson was involved in all aspects of the business."[76] *Manson* is distinguishable. Grand View Tours

---

[73] Ms. Hay believes that Travelers are not entitled to a refund for multiple reasons including because the Terms and Conditions state that both the deposit and final payments are non-refundable. She also noted that some Travelers on the Seeds of Faith Pilgrimage (not those before the court) sought refunds even though they were not vaccinated, declined insurance and/or were not planning to go. *See e.g.* Trial Tr. 269:3-270:19. Nonetheless, Travelers are entitled to recover damages from Grand View Tours for the trip that was not provided due to no fault of their own.

[74] *Com. ex rel. Corbett v. Manson*, 903 A.2d. 69 (Pa. Commw. Ct. 2006).

[75] *Id.* at 71 (citing Findings of Fact, No. 3).

[76] *Id.* at 76.

did not take payments for the Seeds of Faith Pilgrimage knowing or having reason to know that it would not book the trip for Travelers. Indeed, but for the pandemic, the evidence shows that the Seeds of Faith Pilgrimage would have taken place as planned. While Grand View Tours (through Ms. Hay) did not provide a refund for the cancelled trip, the failure to provide the refund emerged after the sale and as a result of the failure of the business not because of any deceptive conduct.

Based on the above, I conclude that Grand View Tours did not violate the Consumer Protection Law. As such, I conclude Ms. Hay has no liability under Pennsylvania's participation theory.

## II.    *Dischargeability*

For the sake of completeness, I will discuss the dischargeability of the Commonwealth's claims assuming that Ms. Hay is responsible for the obligations of Grand View Tours and that I am mistaken and there has been a violation of the Consumer Protection Law.

The Commonwealth asserts that Ms. Hay's liability to the Commonwealth and Travelers is non-dischargeable under two theories. First, the Commonwealth argues that Ms. Hay is not entitled to a discharge for any of her liabilities under §727(a). Second, the Commonwealth argues that debts to it and Travelers are not dischargeable under various sections of §523(a).

*A.   Ms. Hay is entitled to a general discharge.*

The Commonwealth argues that Ms. Hay is not entitled to a general discharge under §727(a)(5). The Commonwealth focuses solely on debt to Travelers by arguing that Ms. Hay must be denied a general discharge because she "has not adequately explained the

19

deficiency of assets to meet the Debtor's liabilities to the Travelers."[77]  The Commonwealth asserts that Grand View Tours received payments from Travelers, did not provide the tour, and did not provide refunds.

Section 727(a)(5) provides that the court shall grant a debtor a discharge unless "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities."[78] This section does not focus on any specific creditor, debt or loss.  Rather, the focus is on disclosure and whether the debtor has satisfactorily explained the current scope of his assets and what may have happened to any assets he once owned.  As Judge Shannon explained, "the objecting party has the burden to show that the debtor at one time owned certain identifiable assets that are no longer available."[79]  Bankruptcy courts have full discretion to decide what constitutes a satisfactory explanation, focusing on whether the explanation describes what happened to a debtor's assets, not whether what happened to the assets was

---

[77] Compl. ¶ 73.

[78] 11 U.S.C. § 727(a)(5).

[79] *In re Kamara*, Case No. 10-12766, Adv. No. 10-55491, 2012 WL 5879718 at * 4 (Bankr. D. Del. Nov. 20, 2012).

proper.[80]  Documentary evidence is not required; oral testimony will suffice.[81]  Denying a general discharge is a harsh remedy.[82]

Initially, the Commonwealth conflates Ms. Hay's assets with that of Grand View Tours.  While under Pennsylvania law, Ms. Hay could have liability for the Traveler's debts by way of the participation theory, the Commonwealth has cited no law for the proposition that Grand View Tours's assets can be attributed to Ms. Hay for any purpose, much less as a basis for a denial of a general discharge in a bankruptcy case.  For this reason alone, Ms. Hay will not be denied a general discharge.

But, assuming I should review Grand View Tours's assets, I easily find that Debtor has explained the state of Grand View Tours's assets satisfactorily.  As reflected in my findings, Grand View Tours took in deposits to its general operating account, used its assets to pay for company expenses, but, at the end of the day, did not have sufficient funds to pay for the Seeds of Faith Pilgrimage or to provide immediate refunds to Travelers. Nonetheless, Ms. Hay has at all times been transparent with Grand View Tours's financial records providing bank statements as requested and corporate tax returns and candidly answering at trial all questions posed about Grand View Tours's use of funds.[83]  While the

---

[80] *In re Park*, F. App'x 88, 93 (3rd Cir. 2017); *Kamara*, 2012 WL 5879718, at *4 ("'To explain satisfactorily' is not defined in the Code; however courts have held that the debtor's explanation must be worthy of belief and appear reasonable, 'such that the court no longer worries what happened to the assets.'") (citations omitted).

[81] *See In re Roodhof*, 491 B.R. 679, 690 (Bankr. M.D. Pa. 2013).

[82] *See In re House*, Case No. 23-10411, Adv. Proc. No. 23-50426, 2024 WL 795156, at *3 (Bankr. D. Del. Feb. 26, 2024).

[83] Commonwealth Exs. 48-51; Debtor Ex. 2.

Commonwealth does not approve of Grand View Tours's business decisions, there has not been a loss of assets, much less an unexplained one. Therefore, the Commonwealth's §727(a)(5) claim fails.

    *B. Any debt to the Commonwealth or Travelers is dischargeable.*

A paramount goal of the Bankruptcy Code is to provide debtors with a "fresh start," i.e.—a new beginning unburdened by overwhelming debt.[84] The Bankruptcy Code accomplishes this goal through the discharge of a debtor's pre-bankruptcy debt.[85] "But, there are limits on a debtor's ability to obtain a fresh start: the 'opportunity for a completely unencumbered new beginning [is limited] to the honest but unfortunate debtor.'"[86] Section 523 of the Bankruptcy Code lists nineteen such limitations; these exceptions are construed "narrowly against the creditor and in favor of the debtor."[87] The burden of proof is on the creditor to prove non-dischargeability by a preponderance of the evidence.[88]

The Commonwealth asserts that its claims for restitution and fines are non-dischargeable under sections 523(a)(2)(A) and 523(a)(7), respectively.[89]

---

[84] *In re House,* 2024 WL 795156, at *2.

[85] *See* 11 U.S.C. § 727(b) ("[A] discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter...").

[86] *In re House,* 2024 WL 795156, at *2 (citing *In re Brady,* 458 B.R. 814, 819 (Bankr. D. Del. 2011)).

[87] *In re Mehta,* 310 F.3d 308, 311 (3d Cir. 2002) (quoting *In re Pelkowski,* 990 F.2d 737, 744 (3d Cir. 1993)).

[88] *Id.*

[89] The Commonwealth abandoned its argument that any portion of its claim is dischargeable under 11 U.S.C. § 523(a)(4). In any event, there is no evidence that Grand View Tours or Ms. Hay had a fiduciary relationship with Travelers or the Commonwealth, embezzled funds or was engaged in larceny. *See generally, House,* 2024 WL 795156, at * 5.

1. *Section 523(a)(2)(A) does not render a portion of the debt non-dischargeable.*

Section 523(a)(2)(A) provides:

(a) A discharge under section 727 . . . of this title does not discharge an
    individual debtor from any debt—
(2) for money, property, services, or an extension, renewal, or refinancing of
credit to the extent obtained by—
      (A) false pretenses, a false representation, or actual fraud, other than a
statement respecting the debtor's or an insider's financial condition.[90]

In order to except a debt from discharge under this section, §523(a)(2)(A), the plaintiff must

show that the debt was obtained by false pretenses, a false representation, or actual fraud –

three distinct, but related concepts which require plaintiffs to demonstrate similar

elements.[91]  To except a debt from discharge on the basis of actual fraud, the plaintiff must

prove that the debtor took some action in furtherance of his wrongful intent, that the

fraudulent action enabled him to obtain money, property, or services, and that the debt

arose in the context of the fraudulent scheme.[92]  False representation requires an express

false statement, while a false pretense includes a knowing and willing implied

misrepresentation that creates a misleading understanding of the transaction by the

plaintiff.[93]  Even a false pretense, arguably the easiest standard to meet, requires an intent to

deceive.[94]

---

[90]  11 U.S.C. § 523(a)(2)(A).

[91]  *See In re Adesanya*, 613 B.R. 808, 826-29 (Bankr. E.D. Pa. 2020).

[92]  *Id.* at 828.

[93]  *Id.* at 827.

[94]  The Commonwealth recognizes this requirement.  Commonwealth Post-Trial Submission, at 4.
*Adesanya*, 613 B.R. at 828 ("Some courts have determined that in order for a debt to be declared
nondischargeable based on false pretenses, plaintiffs must prove that: (1) the debtor impliedly made
a false representation or engaged in deceptive conduct; (2) at the time of the representation or

Based on the testimony, I conclude that Ms. Hay did not intend to deceive any Travelers. First, there is absolutely no evidence that any part of the initial transaction—in which money changed hands—was tainted with fraud, misrepresentation or deceit. Indeed, had the Oberammergau Passion Play not been cancelled, all the evidence suggests that the Seeds of Faith Pilgrimage would have gone forward as originally planned. The Commonwealth's factual assertions only relate to the period two years *after* Grand View Tours collected the deposits. It is undisputed that Grand View Tours obtained deposits legally.

Second, I find and conclude that Ms. Hay did not intend to deceive any Traveler in her communications after the Oberammergau Passion Play was postponed. Ms. Hay credibly testified that the Seeds of Faith Pilgrimage was rescheduled, that her intention was to provide the trip to Travelers, but that Grand View Tours's financial situation precluded that. Ms. Hay credibly testified that she believed Grand View Tours would weather the pandemic as it had with previous interruptions to the travel industry and that this was her belief until February 2022. There was no evidence presented that Ms. Hay and/or Grand View Tours intentionally lied or misled Travelers into believing the Seeds of Faith Pilgrimage would take place at a time when Ms. Hay knew it would not.

---

conduct, the debtor knew, or believed, the implied representation was false or the conduct was deceptive; (3) the debtor acted with an intent and purpose of deceiving the creditor; (4) the creditor justifiably relied upon the representation or conduct; and (5) the creditor sustained damage as a proximate result of the misrepresentation or act.").

While the result was clearly unfortunate, and, in hindsight, it is possible to question Grand View Tours's business judgment or optimism in the face of the unprecedented circumstance of a global pandemic, I find no fraud and no intent to deceive Travelers.[95]

The Commonwealth has not proven that its claim for restitution is excepted from discharge under §523(a)(2)(A).

   2. *Section 523(a)(7) does not render any fine non-dischargeable.*

Section 523(a)(7) provides a specific exception to discharge for penalties payable to the government that are not in remuneration of a pecuniary loss.[96] To be non-dischargeable under §523(a)(7), the fine must arise as a punishment or sanction for some type of wrongdoing by the debtor, either criminal or civil.[97]

The Commonwealth seeks to except civil penalties in the amount of $35,000 based on section 8(b) of the Consumer Protection Law, which provides for penalties for willful use or unlawful acts in amounts up to $1,000 per violation or $3,000 per violation if the victim is over sixty.[98] The first problem with this argument is that the Commonwealth has not been

---

[95] Compare *In re Nordstrom*, 2004 WL 51284, at *4 (relating the failure of a travel agency after 9/11; denying summary judgment on § 523(a)(2)(6) claim in fac of uncontested evidence that travel agent; (i) took deposits without any representations it would be set aside or used only in connection with a specific trip, (ii) commingled deposits received from customers for packages travel and used those funds for general business purposes and (iii) continued to solicit deposit with knowledge of the business' financial difficulties).

[96] *In re Gi Nam*, 273 F.3d 281, 290 (3d Cir. 2001).

[97] *Dobrek v. Phelan*, 419 F.3d 259, 267 (3d Cir. 2005).

[98] 73 P.S. § 201-8(b):
    In any action brought under section 4 of this act, if the court finds that a person, firm or corporation is willfully using or has willfully used a method, act or practice declared unlawful by section 3 of this act, the Attorney General or the appropriate District Attorney, acting in the name of the Commonwealth of Pennsylvania, may recover, on behalf of the Commonwealth of Pennsylvania, a civil penalty of not exceeding one thousand dollars ($1000) per violation, which civil penalty shall be in addition to other relief which may be granted under sections 4 and 4.1 of this act. Where the victim of the willful use of a method,

awarded a penalty; it cites no authority to support the allegations that *potential* civil penalties are non-dischargeable.  More importantly, it has not cited authority for assessing a penalty in these circumstances.[99]

Assuming for the sake of argument that Ms. Hay did violate the Consumer Protection Law (which I only do for purposes of this discussion having found she did not), the Commonwealth has not proven by a preponderance of the evidence that any violation was "willful."  There was no evidence that Grand View Tours or Ms. Hay intended to create any confusion or intentionally set out to deprive Travelers of the Seeds of Faith Pilgrimage or their money.[100]  And there was absolutely no deception in taking the deposits in the first instance.  The Commonwealth has not met its burden to show Grand View Tours or Ms. Hay willfully violated the Consumer Protection Law.[101]

In any event, in these circumstances, I exercise my discretion not to award a fine.[102]

---

act or practice declared unlawful by section 3 of this act is sixty years of age or older, the civil penalty shall not exceed three thousand dollars ($3000) per violation, which penalty shall be in addition to other relief which may be granted under sections 2 and 4.1 of this act.

[99]  The Commonwealth cites *In re Steffy*, 494 B.R. 574 (Bankr. N.D. Ga. 2012).  The question in *Steffy*, was whether a state court judgment awarding the Arkansas Attorney General restitution and penalties under an Arkansas consumer protection law had preclusive effect in a non-dischargeability contest in the bankruptcy court.  Here, there is no judgment.

[100]  *Compare Fisher v. Allstate Ins. Co.*, No. 1009 M.D. 1998, 2001 WL 37067936, at *6 (Pa. Cmmw. Ct. Jan. 18, 2001) ("[b]ecause it was Allstate's intent to create the confusion in the minds of its third party claimants, its conduct was willful and in violation of the Consumer Protection Law.").

[101]  *See In re Styer*, Adv. Pro. 08-2096, 2013 WL 6234621 (Bankr. E.D. Pa. Dec. 2, 2013).

[102]  18A Summ. Pa. Jur.2d Commercial Law § 20:35 (2d ed) ("The imposition of civil penalties under the [Consumer Protection Law] is solely a matter of judicial discretion.") (*citing Com. By Corbett v. Ted Sopko Auto Sales and Locator*, 719 A.2d 1111 (Pa. Cmmw. Ct. 1998)).

**Conclusion**

Based on the evidence presented, I conclude that the Commonwealth has not met its burden of proof.  Rather, Ms. Hay is the honest, but unfortunate, debtor.  Accordingly, Ms. Hay is entitled to a general discharge and the Commonwealth's claims and the claims of Travelers are not exempted under any subsection of § 523.


Dated:  January 8, 2026

Laurie Selber Silverstein
United States Bankruptcy Judge